UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-4698** |
| **GEORGIA-PACIFIC, LLC, ET AL.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. #6) is **GRANTED** and this matter is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

## BACKGROUND

This matter is before the court on a motion to remand filed by plaintiff, Ronald Smith. Smith argues that this matter should be remanded to the Civil District Court, Parish of Orleans, State of Louisiana for lack of subject matter jurisdiction because both he and one of the defendants, Taylor-Seidenbach, Inc., are citizens of Louisiana. Honeywell International, Inc., the removing defendant, contends that this court has diversity subject matter jurisdiction because Taylor-Seidenbach was improperly joined to defeat removal.

On August 12, 2016, Smith, filed this action in the Civil District Court, Parish of Orleans, State of Louisiana alleging that he developed mesothelioma as a result of exposure to asbestos. He named as defendants: Borg-Warner Corp.; Certainteed Corporation; CSR, Inc.; Georgia Pacific, Inc.; Honeywell International, Inc.; The McCarty Corporation; Metropolitan Life Insurance Company; Pneumo Abex, LLC; Reilly-Benton Co., Inc.; Taylor-Seidenbach, Inc.; Union Carbide Corporation; Asbestos Corporation, Ltd.; BayerCropscience Inc.; Beazer East, Inc; Bird Incorporated; OneBeacon American Insurance Company; Houston General Insurance Company; The Stonewall Insurance Company; First State Insurance Company; American Insurance Company; Home Insurance

Company; United States Fidelity and Guaranty Company; and, St. Paul Fire and Marine Insurance Company. Most of the defendants are citizens of states other than Louisiana. However, Taylor-Seidenbach, McCarty Corporation and Reilly-Benton are Louisiana citizens. Further, Eagle, Inc., which would have been a defendant but for its filing bankruptcy is a Louisiana citizen. Because of Eagle's bankruptcy, Smith named Eagle's insurers, OneBeacon, Houston General, Stonewall, First State, American Insurance, Home Insurance, United States Fidelity, and St. Paul Fire and Marine, as defendants. Taylor-Seidenbach, McCarty Corporation, Reilly-Benton, and Eagle are all local commercial and industrial insulation contractors and/or suppliers.

Because of Smith's mesothelioma diagnosis, the state court set an expedited trial date of July 5, 2017. The parties have been conducting discovery. Smith has dismissed his claims against McCarty Corporation, Reilly-Benton, and all of Eagle's insurers. Taylor-Seidenbach is the only remaining defendant that has Louisiana citizenship.

On April 18, 2017, defense counsel received Smith's work history, which was used by Smith's causation expert, Dr. Arthur Frank, to generate his opinions in this case. Honeywell argues that there is no mention in the work history that Smith worked with or around ay type of commercial or industrial insulation product, or worked at a location where such a product was likely to be present. Dr. Frank's report and deposition testimony do not reference any exposures of Smith to any insulation products.

On April 24, 2017, Taylor-Seidenbach responded to discovery propounded by Smith. Taylor-Seidenbach stated that it did not have any documents showing that it had a relationship with

2

any of Smith's employers or their suppliers, or any information pertaining to Smith's work with joint compound products, or roofing products.

On April 27, 2017, Smith responded to discovery requests propounded by Honeywell, which sought information that would demonstrate that Smith worked with or around products supplied by any of the four Louisiana insulation contractors, and asking Smith to identify and produce evidence support his claims against those defendants. Smith responded that he lacked such information and that he could not identify any witnesses or evidence support his claims against Taylor-Seidenbach, or any of the other Louisiana-citizen defendants. However, Smith stated that discovery was ongoing and reserved the right to supplement his responses.

On May 4, 2017, Honeywell removed this action to the United States District Court for the Eastern District of Louisiana, alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332. Honeywell contends that all of the properly joined defendants have diverse citizenship from Smith and that there is more than $75,000 in controversy. Honeywell removed this action within 30 days of receiving Smith's discovery responses, which it contends constitute "other paper" demonstrating that the case has become removable within the meaning of 28 U.S.C. § 1446(b)(3). Honeywell argues that Taylor-Seidenbach was improperly joined to defeat removal because Smith's work history and discovery responses demonstrate that Smith cannot prevail on his claims against Taylor-Seidenbach. Further, Honeywell argues that Smith has failed to develop evidence to support his allegations against Taylor-Seidenbach, and that no witness deposed has identified Taylor-Seidenbach as having sold, supplied, distributed or installed asbestos-containing products to which Smith was allegedly exposed, nor has any evidence indicated that Smith was employed at any

location when Taylor-Seidenbach's materials were present or work was being performed. Thereafter, Smith filed the instant motion to remand. He argues that Taylor-Seidenbach was not improperly joined.

## ANALYSIS

### I. Remand Standard

Motions to remand to state court are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993). In assessing whether removal is appropriate, the court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). Doubts regarding whether federal jurisdiction is proper should be resolved against federal jurisdiction. Acuna v. Brown & Root, 200 F.3d 335, 339 (5th Cir. 2000).

### II. Diversity Subject Matter Jurisdiction under § 1332(a)

Honeywell removed this action alleging that this court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), which provides that district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and are between citizens of different States. Honeywell contends that Smith is a Louisiana citizen, and the properly joined defendants are not. Honeywell argues that Taylor-

Seidenbach, which is a Louisiana citizens, was improperly joined solely to defeat diversity subject matter jurisdiction.

**A. Improper Joinder**

Honeywell argues that Taylor-Seidenbach's citizenship should be disregarded for the purposes of establishing subject matter jurisdiction because it is improperly joined contending that Smith cannot maintain a claim against Taylor-Seidenbach under Louisiana law.

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the allegedly improperly joined parties in state court. Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*). The United States Court of Appeals for the Fifth Circuit has stated:

> The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.
>
> \*   \*   \*
>
> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, . . ., in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In which cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

Id. (citations omitted). Further, the United States Court of Appeals for the Fifth Circuit cautioned "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573–74.

The "burden of persuasion placed upon those who cry 'fraudulent [or improper] joinder' is indeed a heavy one." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). When reviewing an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995) (quoting B., Inc., 663 F.2d at 549). Further, the court must resolve all ambiguities in the controlling state law in the plaintiff's favor. Id.

### B. Smith's Cause of Action Against Taylor-Seidenbach

Because defendants do not claim that Smith committed actual fraud in the pleadings, the sole issue for determining whether Taylor-Seidenbach is improperly joined is whether Smith would be able to establish causes of action against them in Louisiana state court. See Smallwood, 385 F.3d at 573.

To prevail in an asbestos case, a plaintiff must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendant's product, and that he received an injury that was substantially caused by that exposure. Rando v. Anco Insulations, Inc., 16 So.3d 1065, 1088 (La. 2009). "Louisiana courts employ a 'substantial factor' test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiff's asbestos-related disease." Robertson v. Doug Ashy Bldg. Materials, Inc., 2014 WL 7277836, at *1 (La. Ct. App. 2014) (citing Rando, 16 So.3d at 1088). "In an asbestos case, the claimant must show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about an injury." Id. (citing Rando, 16 So.3d at 1091).

Smith contends that he can maintain a cause of action against Taylor-Seidenbach because there are multiple sources by which he plausibly could have come in contact with asbestos-containing products connected to Taylor-Seidenbach. Smith testified at his deposition that he worked as a roofer with and around asbestos-containing shingles and roofing felts from 1969 through the 1970s. Smith testified that he worked with Johns-Manville shingles when he worked for S.W. Campbell & Son Roofing.

Grant Campbell supported Smith's testimony. At his deposition, Grant Campbell testified that he worked at S.W. Campbell & Son Roofing from 1965 to 1972. Campbell ran Campbell Building Materials from 1974 to the late-1980s. Campbell testified that Campbell Building Materials supplied Johns-Manville roofing products to S.W. Campbell & Son Roofing during this time.

Smith's testimony is further supported by the deposition testimony of his brother, Elijah Smith. E. Smith testified that he worked with Smith at S.W. Campbell & Son Roofing for a few years, beginning in about 1974. E. Smith stated that he and Smith worked with roofing products manufctured by Johns-Manville.

In a 2001 deposition, Taylor-Seidenbach's corporate representative, Ralph Shepard, testified that Taylor-Seidenbach was a supplier of Johns-Manville roofing products in the New Orleans area from 1946 to the time of the deposition. This testimony is supported by a 1976 newspaper advertisement in which Johns-Manville lists Taylor-Seidenbach, along with many other companies, as a supplier of its products. Thus, Smith argues that he plausibly could have come in contact with asbestos-containing roofing materials connected to Taylor-Seidenbach.

Smith also argues that he could have been exposed to asbestos-containing products connected to Taylor-Seidenbach at the Johns-Manville and Celotex plants in Marrero, Louisiana. Smith testified that he worked as a laborer at the Johns-Manville plant in 1982, which involved sweeping dust piles throughout the plant. He also states that he worked at the Celotex plant for two-to-three years in the early 1980's sweeping the plant, which created dust. Smith claims that he encountered Taylor-Seidenbach materials at both the Johns-Manville and Celotex plants. As evidence, Smith cites Shepard's deposition in which he testified that from 1946 to 1976, Taylor-Seidenbach supplied and installed Kaylo pipe and block insulation. Smith relates this to his time at Celotex through the testimony of Marshall Ponson, a steamfitter employed at Celotex from 1946 to 1988, who testified, in unrelated litigation, that Kaylo pipe covering was used at the plant and that the process of pipe insulation caused dusty conditions. Smith also cites the affidavit, from unrelated litigation, of Dwight Corcoran, a former employee of Taylor-Seidenbach, who stated that from 1969 to 1995, he worked with, supplied and installed asbestos-containing products supplied by Taylor-Seidenbach at the Johns-Manville plant in Marrero. Smith argues that this evidence is sufficient to demonstrate that he plausibly could have come in contact with asbestos-containing materials connected to Taylor-Seidenbach at the Johns-Manville and Celotex plants.

Honeywell argues that the evidence cited by Smith establish a theoretical possibility that he encountered asbestos linked to Taylor-Seidenbach, but that it does not establish that there is a reasonable probability that Smith will be able to recover against Taylor-Seidenbach. As to the roofing materials, Honeywell argues that Taylor-Seidenbach was not the exclusive supplier of Johns-Manville roofing materials in the New Orleans area during the relevant time, and Taylor-Seidenbach has no documentary evidence connecting it to any of Smith's employers. Thus, Honeywell argues

that the Johns-Manville roofing materials used by Smith's employers likely came from a source other than Taylor-Seidenbach.

Regarding Smith's employment at the Johns-Manville plant, Honeywell points out that Smith testified at his deposition that he worked part-time at the Johns-Manville plant in 1982 as part of a temporary crew hired to sweep out the closed plant. The plant had ceased operation and no machinery was in the buildings. Smith could not identify the type of dust at the plant or in which part of the factor he worked. Honeywell argues that the mere presence of dust at the plant does not lead to the logical conclusion that Taylor-Seidenbach was the source of that dust considering that, since the late 1940s, the plant's operations "involved moving may hundreds of thousands of tons of finely-powdered raw materials (including asbestos, cement, and silica sand) through tremendously dusty processes such as "fluffing" and milling raw asbestos."

Honeywell also points out that Corcoran's affidavit does not specify the when he worked at the 75 listed industrial sites where he worked with asbestos containing products form 1965 to 1999, and cannot connect Smith to Taylor-Seidenbach projects. Honeywell argues that Corcoran could not have been at the Johns-Manville plant at the same time as Smith because Corcoran would have been installing or repairing insulation for an operating factory, and the plant was shut down when Smith was employed there to clean it up.

As to Celotex, Honeywell argues that Smith testified that he did cleanup work for two to three years in the early 1980s in a warehouse were Celotex stored shingles, sheetrock, and "black boards," but the testimony does not indicate any proximity to any asbestos containing materials at Celotex, and there is no indication that Celotex stored Taylor-Seidenbach's products in its warehouse. Further, Ponson testified that "Kaylo" brand pipe insulation was used at Celotex, but

9

he does not testify that people doing Smith's type of work were present during his work on Celotex's pipes. To the contrary, Ponson testified to working in a manufacturing area, whereas Smith worked in a warehouse. Moreover, Ponson did not testified that the Kaylo or raw asbestos was provided by Taylor-Seidenbach. Thus, Honeywell contends that the evidence proffered by Smith does not established that he was exposed to Taylor-Seidenbach asbestos or that he has a reasonable probability of recovering against Taylor-Seidenbach.

The evidence Smith presents potentially places him in contact with many sources of asbestos-containing products connected to Taylor-Seidenbach, particularly with respect the Johns-Manville roofing materials. Discovery in this matter is not complete. Specifically, Smith has not yet deposed Taylor-Seidenbach's corporate representative. This individual may have information regarding Taylor-Seidenbach's sale of asbestos-containing roofing materials to Smith's employers or their suppliers, thus connecting Smith to Taylor-Seidenbach during the relevant time. Further, the Taylor-Seidenbach representative may have further information regrading Taylor-Seidenbach's work at the Johns-Manville and Celotex plants that could connect Smith to Taylor-Seidenbach. When evaluating all of the factual allegations in the light most favorable to Smith, and resolving all contested issues of substantive fact in Smith's favor, there is a reasonable possibility that a state court would impose liability on Taylor-Seidenbach. Smith's motion to remand is GRANTED, and this matter is REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. #6) is **GRANTED** and this matter is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this <u>22nd</u> day of May, 2017.

                                      **MARY ANN VIAL LEMMON**
                                      **UNITED STATES DISTRICT JUDGE**